UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-22624-CV-WILLIAMS

EURIALO LOSADA DIAZ,

    Petitioner,

v.

CHARLES PARRA, *et al.*,

    Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Eurialo Losada Diaz's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("***Petition***") (DE 1). In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (DE 6). Respondents filed their Response on June 16, 2025 ("***Response***") (DE 10), and Petitioner replied on June 18, 2025 ("***Reply***") (DE 11). Additional submissions were made by the parties and considered by the Court. *See* DE 14, 15, 20, 21, 22, and 23. On January 20, 2026, the Court held a hearing in this matter and heard argument of counsel. (DE 24). Accordingly, the Court has considered those arguments, the Petition, Response, Reply, and the record and is otherwise fully advised in the premises. For the reasons set forth herein, the Petition is **GRANTED IN PART**.

**I.  FACTUAL BACKGROUND**

Petitioner Eurialo Losada Diaz is a native and citizen of Cuba who has resided in Miami, Florida, for thirty-seven years since his initial arrival in December 1988. (DE 1 at ¶ 5). As a lawful permanent resident, Petitioner lived most of his adult life in the United States alongside his wife, an American citizen, with whom Petitioner shares a young

daughter. (DE 11 at 2). In 2001, Petitioner was convicted of one count of lewd and lascivious exhibition on a child under the age of sixteen and was sentenced to time served and five years of probation. (DE 10 at 2). The conviction prompted removal proceedings and the issuance of a Notice to Appear. (*Id.*). Shortly thereafter, in May 2021, an Immigration Judge ("IJ") ordered Petitioner's removal to Cuba, but simultaneously granted Petitioner deferral of removal under Article III of the Convention Against Torture ("CAT"), ordering Petitioner could not be removed to Cuba nor any third country that would return him to Cuba. (DE 11 at 2; DE 1 at ¶ 13). As a result, Petitioner was released from custody pursuant to an Order of Supervision ("OSUP"). (DE 1 at ¶ 14).

Petitioner alleges that he has never committed any act or omission in violation of the OSUP and has obliged with all reporting requirements. (*Id.* ¶ 15). Moreover, as of the filing of the Petition, Petitioner's deferral of removal had not been terminated, and Respondents had taken no steps toward effectuating his removal since 2021. (*Id.* ¶¶ 13–16). These circumstances changed on June 7, 2025—four years and 19 days after Petitioner's removal order was issued. (*Id.* ¶ 12). On that date, despite Petitioner's CAT protection and deferral of removal, ICE agents went to his mother's home, detained Petitioner, and transported him to Krome North Service Processing Center in Miami, Florida. (*Id.* ¶¶ 4, 12). Respondents allege that ICE revoked Petitioner's OSUP on the same date Petitioner was taken into custody and that Petitioner received a Notice of Revocation dated June 7, 2025. (DE 10 at 3; DE 1 at ¶ 12). However, contrary to Respondents' assertions, Petitioner insists he was served a warrant of arrest and revocation notice nine days later, on June 16, 2025, and that the date on the Notice of Revocation "appears to have been whited out and re-written." (DE 11 at 2–3).

Petitioner seeks immediate release from ICE custody on two grounds: (1) Petitioner's ongoing detention violates his Fifth Amendment right to due process because his removal is not imminent; and (2) Petitioner's relocation to another facility without notice would significantly disrupt his legal representation in this action and another action where Petitioner is a member of a certified class, in violation of his Sixth Amendment right to counsel. (DE 1 at ¶¶ 20–29). Accordingly, Petitioner asks this Court to order his immediate release from custody and enjoin Respondents from transferring him from this jurisdiction.[1] (*Id.* at 7–8).

Respondents oppose Petitioner's release and argue (1) DHS properly revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.4(l)(2) and his period of detention is presumptively reasonable; (2) habeas petitioners do not have a constitutional right to counsel and, even if they did, relocation would not violate such right; and (3) injunctive relief is inappropriate. (DE 10 at 3–7).

On November 20, 2025, Judge Martinez directed the parties to file supplemental briefing in light of Petitioner's suggestion that significant developments in related proceedings bear directly on the issues presented in this case. (DE 13). In response, Respondents indicated that lifting the Court's existing prohibition on transfer (DE 6) would render Petitioner's claims moot because removal could be accomplished. (DE 14 at 2). To support this contention, Respondents cited to a declaration by Supervisory Detention and Deportation Officer Gunnar Pedersen, who merely said, "[t]he Government of Mexico has agreed to accept the repatriation of Cuban citizens with final orders of removal from

---

[1] On June 12, 2025, United States District Judge Jose E. Martinez issued an order to show cause (DE 6), which ordered Petitioner not to be "transferred to any other facilities outside the Southern District of Florida pending resolution of this matter." (*Id.* at 2).

the United States;" and therefore, "[u]pon vacatur of the court's order prohibiting Petitioner's transfer," ERO "intends to affect Petitioner's removal to Mexico." (DE 14-2 at ¶¶ 9, 11). Officer Pedersen further indicates that "[o]n October 17, 2025, ERO Miami served Petitioner with a Notice of Removal to a Third Country, which Petitioner refused to sign." (*Id.* ¶ 10).

On January 14, 2026, this Court[2] ordered Respondents to file a notice outlining the plan for Petitioner's removal and set this matter for hearing. (DE 19). Two days later, Respondents submitted a three-page supplemental declaration by Officer Pedersen, who stated there were "streamlined procedures" for removing "foreign nationals" to Mexico. (DE 21-1 at ¶ 7). As described generally in the declaration, ERO submits a list of non-Mexican foreign nationals to the Mexican authorities[3] and then transports the listed persons to the border. (DE 21-1 ¶¶ 8-9). On the same date that the individuals are transported to Mexico, the Mexican authorities confirm that the non-Mexican individual will be accepted. (*Id*. ¶ 10). But no substantive factual description of an agreed-to formal process is set forth, and the declaration provides no assurance that, at the last juncture, the individual will, in fact, be accepted by the Mexican government.

II. **LEGAL STANDARD**

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* "Claims challenging the fact or duration of a sentence fall within

---

[2] The instant case was reassigned to the Undersigned on December 17, 2025.

[3] Respondents' submission makes no reference to a particular Mexican authority or agency working with or bound by the unidentified agreement with the United States.

the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004); other citations omitted). The Court has jurisdiction to adjudicate "statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### III. DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release based on alleged violations of his Fifth Amendment and Sixth Amendment constitutional rights, and an injunction preventing his transfer to another district. (DE 1). Respondents oppose Petitioner's release on several grounds. (DE 10).

#### A. Petitioner's Continued Detention Violates Fifth Amendment Due Process.

The Fifth Amendment's Due Process Clause provides that the Government shall not "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Immigration and Nationality Act provides that ICE must remove an alien subject to a final order of removal within ninety days. *See* 8 U.S.C. § 1231(a)(1)(A). But some aliens "may be detained beyond the removal period and, if released, shall be subject" to terms of supervision. *Id.* § 1231(a)(6). Notably, the Supreme Court has held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute." *Zadvydas*, 533 U.S. at 699 (citation omitted).

Petitioner asserts that his continued detention is unlawful because his removal is not imminent, and his deferral of removal has not yet terminated. (DE 1 at ¶ 20–25). Petitioner also argues that he has not had the opportunity to exercise his right to contest

removal to a third country (namely, Mexico) before any court, and there is no evidence that a third country has accepted him for removal. (*Id.* at 2, 6). In response, Respondents initially argued that Petitioner's due process right had not been violated because, at the time of filing the Response, "[t]he Department of Homeland Security properly revoked Petitioner's order of supervision pursuant to 8 C.F.R. § 241.4(l)(2), and Petitioner ha[d] only been in custody since June 7, 2025." (DE 10 at 3). However, Respondents' supplemental briefing asserts that, upon lifting this Court's prohibition on transfer, Petitioner's due process claim will become moot because Petitioner's removal will be imminent as Mexico is accepting Cuban nationals. (DE 14 at 2-3).

### 1. Petitioner's Length of Detention Exceeds the "Presumptively Reasonable" Period.

A detention period of up to six months is presumptively reasonable, and an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Therefore, in order to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Then, the government must "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Petitioner has been in custody since June 7, 2025, almost eight months. (DE 10 at 2–3). This period of time exceeds the "presumptively reasonable" six-month period established by the Supreme Court. *See Zadvydas*, 533 U.S. at 701. Accordingly, the Court

assesses whether there exists a significant likelihood of removal in the reasonably foreseeable future.

### 2. Petitioner's Removal is Unlikely to Occur in the Reasonably Foreseeable Future.

"Some possibility of an eventual removal is not the same as a significant likelihood that removal will occur in the reasonably foreseeable future." *Sanchez v. Noem*, No. 5:25-CV-00104, 2025 WL 3760317, at *10 (S.D. Tex. Nov. 14, 2025); *see also Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) ("Thus far, Respondents have only made conclusory statements that they are taking steps to remove Petitioner to Mexico or perhaps Canada. 'A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future.'" (citation omitted)); *Kane v. Mukasey*, No. CV B-08-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), *superseded*, No. CV B-08-037, 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008), *report and recommendation adopted*, No. CV B-08-037, 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008) ("[A] theoretical possibility of eventually being removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe that his removal is not significantly likely in the reasonably foreseeable future." (citation omitted; alteration added)). Further, evidence of general steps being taken nationwide to remove similarly situated individuals cannot satisfy the standard. *See Phongsavanh v. Williams*, No. 4:25-CV-00426-SMR-SBJ, 2025 WL 3124032, at *5 (S.D. Iowa Nov. 7, 2025) ("[T]he record contains scant evidence of changed circumstances or a significant likelihood of removal in the reasonably foreseeable future. . . . The Government has acknowledged that only general steps are being taken nationwide to remove similarly situated individuals. It

concedes that no specific steps have been taken to identify a third county willing to accept [the petitioner]." (citations omitted; alterations added)).

Here, Respondents argue Petitioner's claims will become moot if the Court removes the stay imposed by Judge Martinez because "removal will be accomplished." (DE 14 at 2). Despite Respondents' hortatory language, they fail to explain how or when Petitioner's removal will be accomplished.[4] Instead, Respondents rely on the "conclusory statements" and "general steps" being taken, characterizations that courts have routinely rejected as insufficient to satisfy the Government's burden. *See, e.g. Escalante*, 2025 WL 2206113, at *4; *See also Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he Government simply states that it will attempt to remove him. It does not identify Mexico's processes or policies for accepting Cuban nationals") (quotations omitted).

Respondents cite the declaration of a deportation officer, who describes how the "Government of Mexico has agreed to accept the repatriation of Cuban citizens with final orders of removal from the United States." *Id.* at 2. But Respondents set forth no specific plan for Petitioner's proposed repatriation, nor do they state that Mexico has actually agreed to accept Petitioner. (*See generally* DE 14). Rather, the declaration describes general steps taken to remove similarly situated Cuban citizens with final orders of removal from the United States. *Id*. "[S]tanding alone, the fact that removals to a particular country are in fact occurring, says nothing about whether Mexico will accept [Petitioner]

---

[4] Although Petitioner produced the very detailed protocols that must be taken to repatriate a Mexican citizen, and the memoranda allowing such repatriation to be achieved, Respondents can cite to no document, memorandum of understanding, or official order approved by the Mexican government or any Mexican official that allows for removal of Cuban citizens to third-country Mexico.

any time soon." *Arenado-Borges*, 2025 WL 3687518, at *4. Respondents fail to put forth information demonstrating specific steps that have been taken or will be taken to effectuate Petitioner's removal, and "[s]ome possibility of an eventual removal is not the same as a significant likelihood that removal will occur in the reasonably foreseeable future." *Sanchez*, 2025 WL 3760317, at *10; *see also* DE 14). Moreover, Respondents provide the Court with no guarantee that Mexican officials will not repatriate Petitioner to Cuba.

The Court's confidence in Petitioner's foreseeable removal is also undermined by the fact that several other district courts have recognized that "Mexico's acceptance may be contingent on the noncitizen's acceptance." *Arenado-Borges*, 2025 WL 3687518, at *4; *see also Sanchez v. Bondi, et al.*, No. C25-2573-KKE, 2026 WL 160882, at 3–4 (W.D. Wash. Jan. 21, 2026) (granting petitioner's habeas petition and noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner). In *Arenado-Borges*, the court noted an instance where ICE ERO drove a Cuban national to the Mexican border to effectuate third country resettlement, but Mexico refused to accept the Cuban national "because he did not agree to be removed to Mexico." *Arenado-Borges*, 2025 WL 3687518, at *4. Likewise, in *Sanchez*, "a deportation officer in the ICE ERO San Diego Field Office, attest[ed] that in *Rios v. Noem*, No. 25-cv-2866-JES-VET (S.D. Cal. 2025), Mexico conditioned the acceptance of a Cuban national ordered removed on his willingness to be removed there." *Sanchez*, 2026 WL 160882, at *3. "This evidence of Mexico's acceptance policy casts further doubt on the Government's ability to remove [Petitioner] to Mexico in the reasonably foreseeable future, especially when the Government has failed to explain why it believes Mexico will accept [Petitioner]

specifically.[5] *Arenado-Borges*, 2025 WL 3687518, at *4. Accordingly, although there may be some possibility that Mexico might accept Petitioner, "that is not the same as a significant likelihood that [Petitioner] will be accepted in the reasonably foreseeable future." *Id.* (quotations omitted).

Additionally, in his Reply, Petitioner cites the regulations governing OSUP revocation and argues his detention violates those regulations,[6] including the fact that he is entitled to an interview, which he declares he never received. (*See generally* DE 1; *see also* DE 11 at 5–6). (*Id.*). While the critical inquiry here is not whether Petitioner's OSUP was validly revoked, but rather whether his continued detention is unlawful, as noted during the hearing, the Court finds this information to be relevant context in determining whether there exists a significant likelihood of removal in the reasonably foreseeable

---

[5] The Court notes that Petitioner's criminal history may warrant more scrutiny and special consideration by Mexican officials. (DE 10 at 2).

[6] Respondents indicate that Petitioner's OSUP was revoked under 8 C.F.R. § 241.4(l)(2), which permits revocation "in the exercise of discretion when, in the opinion of the revoking official":

(i)   The purposes of release have been served;
(ii)  The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv)  The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

(*See* DE 10 at 3 ("The Department of Homeland Security properly revoked Petitioner's order of supervision pursuant to 8 C.F.R. § 241.4(l)(2) . . . .")). When an individual's OSUP is revoked under § 241.4(l), the individual must be "notified of the reasons for revocation." 8 C.F.R. § 241.4(l)(1). Upon returning to ICE custody, the individual must be "afforded an initial informal interview promptly to . . . respond to the reasons for revocation stated in the notification." *Id.* "[T]he notice and informal interview requirement stated in § 241.4(l)(1) applies to revocation under § 241.4(l)(2)." *Grigorian v. Bondi*, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025) (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 17, 163 (W.D.N.Y. 2025) (collecting cases)).

future. Indeed, courts consider facts providing such context, even when such facts are not dispositive. *See, e.g.*, *Puertas-Mendoza v. Bondi*, No. SA-25-CA-00890-XR, 2025 WL 3142089 (W.D. Tex. Oct. 22, 2025), *judgment entered*, No. SA-25-CA-00890-XR, 2025 WL 3142091 (W.D. Tex. Oct. 22, 2025) ("The fact that removal to a third country is unusual is not necessarily decisive, but it is important context.").

Here, Petitioner contends that he never received sufficient notice of the reasons for OSUP revocation nor any informal interview. (*See* DE 1 at ¶ 24; DE 11 at 5–6). In response, Respondents offer only a Notice of Revocation of Release, dated June 7, 2025, with generic, boilerplate language indicating that the revocation decision was made due to "changed circumstances in [Petitioner's] case" and stating that Petitioner would "promptly be afforded an informal interview." (DE 10-6). Petitioner points out that the date on the June 7 Notice appears to have been altered, and in any event, he never received it. (*id.*).[7] Petitioner further contends that he received documentation of a third-country removal on June 16, 2025, but was told by a Krome official to disregard the document. (DE 11 at 2). Thus, no evidence before the Court shows Petitioner ever received an interview or had an opportunity to respond to any specific assertions justifying the revocation. (*See generally* DE 1; DE 10; DE 11; DE 14; DE 15; DE 18; DE 20; DE 21). Conversely, Petitioner has offered sufficient evidence to show that he has not yet received notice or an informal interview. Respondents' failure to rebut this evidence suggests

---

[7] Petitioner also declares that, on November 26, 2025, an officer mentioned an issue with his file and paperwork that he never received. (DE 15-1 at ¶ 5). According to Petitioner, he was then provided six documents and two notices of interview for the first time, but he never had a chance to adequately prepare for an interview or to supply the necessary documents to argue against removal. (*Id.* ¶ 6).

Respondents must still provide Petitioner with the process to which he is entitled, making his eventual removal an even more remote possibility.[8] *See* 8 C.F.R. § 241.4(l).

Based on the foregoing, Petitioner has demonstrated post-removal order detention in excess of six months and good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *See Akinwale*, 287 F.3d at 1052; *Zadvydas*, 533 U.S. at 701. Furthermore, Respondents have not responded with sufficient evidence to rebut Petitioner's showing that his removal is not imminent. Thus, Petitioner's "continued detention is no longer authorized," and he must be released from custody. *Zadvydas*, 533 U.S. at 699 (citation omitted).

### B. Petitioner's Sixth Amendment Right to Counsel.

The violation of Petitioner's Fifth Amendment due process right is a sufficient basis to grant the Petition. And because Petitioner is entitled to immediate release on that basis, the Court need not reach Petitioner's Sixth Amendment claim, which, in any event, the Court does not find particularly compelling.

### C. Petitioner's Request for Injunctive Relief.

Petitioner further seeks injunctive relief and asks the Court to enjoin his transfer from this District. As discussed at the hearing, in light of the Court's order to immediately release Petitioner due to the constitutional violations discussed above, the Court defers ruling on Petitioner's request for injunctive relief.

---

[8] *See Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations."); *see also Wash. v. Comm. of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (noting that agencies are required to follow their regulations "where the failure to enforce such regulations would adversely affect substantive rights of individuals") (internal quotations omitted).

IV. **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Mr. Eurialo Losada Diaz's Petition (DE 1) is **GRANTED IN PART**.

2. Immigration and Customs Enforcement - Enforcement and Removal Operations ("ICE-ERO") is **DIRECTED** to release Mr. Eurialo Losada Diaz from custody under release conditions that ICE-ERO deems appropriate and in compliance with the mandates of 8 C.F.R. §§ 241.4 and 241.13.

3. On or before **February 3, 2026**, the Parties shall submit a joint notice informing the Court of the status of this matter.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 25th day of January, 2026.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE